### DAVID GOODWILLIE

*v.*

### DENNIS MCCARTHY.

</div>

1. AGENCY—*when a master of a vessel becomes the agent of both its owner and the owner of the cargo.* Where a disaster happens at sea, the master of the vessel, from necessity, becomes the agent of all persons interested in the vessel and its cargo, so far as it may be necessary to secure their safety.

2. SAME—*when action of agent cannot be questioned.* And in such case, where the property has been saved, and is liable for contribution in general average for expenses incurred, although at great cost, the question is not

whether it might not have been preserved at a less expense had the master pursued a different course, by separating the vessel from its cargo, but is, whether the expenses incurred resulted in their common safety and were made for their common benefit.

3. SAME — *master must act in good faith.* But the master must act in good faith, without the intent to sacrifice the interest of any person interested for that of another, that the doctrine of general average may apply equally to all, and no one be permitted to derive an equal benefit, at a less expense, than his fellows.

4. CARGO — *when liable to contribution in general average.* Where a vessel meets with a disaster at sea, and the master, in good faith, acting for the common benefit of all concerned, and without intent to sacrifice the interest of any party interested in the vessel or its cargo for that of another, secures the safety of the whole, and thereby incurs great expense, the owner of the cargo is liable to contribution in general average for such expenses, without regard to the question whether such expenses might not have been lessened, had the cargo been separated from the vessel.

APPEAL from the Superior Court or Chicago.

The facts in this case are fully stated in the opinion.

Messrs. MILLER, VAN ARMAN & LEWIS, and Mr. GEORGE B. HIBBARD, for the appellant.

Mr. ROBERT RAE, for the appellee.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

The schooner T. Y. Avery, loaded with lumber and bound for Chicago, was badly damaged by collision with a propeller, on the 29th of September, 1864. The propeller towed her into Mackinaw, the nearest port of refuge, and distant only a few miles from the place where the collision occurred. After making some slight repairs, and putting her deck load on the pier, she was towed by a tug to Milwaukee, the nearest port of repair, and thence by another tug to Chicago. The lumber was then delivered to Goodwillie, the consignee, upon his signing a general average bond. This is a suit upon that bond, and the question presented for our determination is, whether the lumber brought by the schooner to Chicago is liable to contribution in general average, for the expenses incurred in

bringing the vessel and cargo from Mackinaw to that port. These expenses were very heavy, the proportion chargeable to the cargo being $1,666.17, and the argument of the appellant is, that, as the entire cargo, as well as the deck load, might have been unloaded at Mackinaw, where it would have been safe until it could have been taken away by another vessel, and as this would have involved the owners of the cargo in far less expense, it was the duty of the master of the vessel to have adopted this course, and the cargo should not be subjected to contribution for expenses that were really incurred, as is urged, chiefly for the benefit of the vessel.

It appears by the evidence, that after arriving at Milwaukee, the nearest port of repair, it was better for all parties that the schooner should be thence towed to Chicago and deliver her cargo, instead of waiting for repairs at Milwaukee. No question is made by the appellant on that point, nor on the mode in which the account was stated by the adjuster of marine losses, if it is held that the appellant is liable in general average for any of the expenses.

It cannot be denied that there is some force in the position of appellant, but it is inconsistent with all the adjudged cases except that of *Job* v. *Langton*, 6 Ellis & B. 779, and that case must be considered as substantially overruled, so far as it touches this question, by the same court in *Moran* v. *Jones*, 7 Ellis & B. 529.

In cases of disaster at sea, the master is considered, from necessity, the agent both of the owner of the ship and the owner of the cargo, so far as it may be necessary to take measures for their preservation. 1 Parsons on Maritime Law, 163. If the expenses incurred by him are of a nature to be made the subject of general average, and if they have resulted in the final preservation of both ship and cargo, though at a large cost, the question cannot be raised whether the master might not, by transshipment, or by discharging his cargo at some intermediate point, have saved it at less expense than that resulting from the course actually pursued. Of course, the master must act in good faith, and not with the intent to

deliberately sacrifice the interests of the shipper to the carrier, or those of the carrier to the shipper. But if he does act in good faith, as the common agent of both parties, the interests of commerce obviously require that neither should be permitted to escape the application of the equitable doctrine of general average on the ground that, by the separation of ship and cargo, one of them might have been saved at a less expense. We have carefully examined the authorities on this subject, and find nothing in them to sustain this doctrine. On the contrary, the ship and cargo are constantly recognized as closely bound to each other by a common interest, and so long as they are in fact kept together, the question is not whether they might not have been separated to the advantage of one of them, but whether the extraordinary expenses incurred in consequence of a sea peril were incurred for their common benefit and resulted in their common safety.

The doctrine of general average has even been applied in some cases where the ship and goods have been separated. Thus in *Beavan* v. *The Bank of the United States*, 4 Whart. 301, the vessel was ice bound in Delaware Bay, and in great danger of being wrecked. A quantity of specie which had been shipped to the bank was taken out and conveyed by land to Philadelphia. A few weeks afterward the vessel arrived with the remainder of her cargo, having incurred various expenses in the mean time for lighterage and in other modes. It was held, that the bank must pay its proportion of the expenses. This is certainly an extreme case, but it shows how far the courts have gone in the application of this doctrine. The case of *Nelson* v. *Belmont*, 5 Duer, 310, and 21 N. Y. 36, was of similar character. There, specie had been taken out of a ship that was on fire and transferred to a brig that was passing. The fire was subdued, and the ship and brig proceeded together to an intermediate port. The master of the ship again took possession of the specie before reaching the wharf, and afterward deposited it in a bank. It was held the specie was liable to contribute for all general average expenses, whether incurred prior or subsequent to its removal. In the

case of *Job* v. *Langton, ubi supra,* the cargo went forward by another vessel, but it was by agreement submitted for decision on the hypothesis, that there had been no transshipment. Lord CAMPBELL, giving the opinion of the court, held the cargo not liable in general average, for expenses incurred by the ship in returning to Liverpool for repairs, after the cargo had been safely landed and warehoused at Dublin. But in *Moran* v. *Jones, ubi supra,* a ship, sailing from Liverpool, was driven by a storm on a bank, and, the cargo having been taken out and sent back to Liverpool, and there warehoused, the vessel itself, after some days, was got off the bank and taken back to Liverpool for repairs. Having been there repaired, it again took on board its cargo and proceeded on its voyage.

The same court held, that the cargo was liable in general average for the expense incurred in getting off the ship and bringing it back to Liverpool. Lord CAMPBELL, in giving the opinion of the court, attempts to distinguish the case from that of *Job* v. *Langton,* by saying that in the latter case the goods had been saved by a distinct and completed operation, and that afterward a new operation began for the safety of the ship, while in the case before them the saving of the goods and ship was one continuous transaction. We are wholly unable to discover any substantial difference in the facts of the two cases, or any difference indeed upon which a legal distinction can be based, and we must regard *Job* v. *Langton* as overruled by the subsequent case. But, whether we should consider it overruled or not, it is at least so explained in *Moran* v. *Jones,* that it is not authority for the appellant in the present case. For in the case before us the lumber that is sought to be subjected to general average never left the vessel until its arrival at Chicago, and in *Moran* v. *Jones,* when counsel in argument cited *Job* v. *Langton,* Lord CAMPBELL, interrupting, remarked: "Had the goods remained on board they would of course have been liable to contribute to general average." We are not certain whether he referred, in making this remark, to *Job* v. *Langton* or to the case then before the court, nor is it material. The remark itself, and the language used in the final opinion, where refer-

ence is made to the fact, that in the case before them the goods had remained in the custody and under the control of the master until the ship was repaired, clearly show, that, in the judgment of that court, notwithstanding its ruling in *Job* v. *Langton*, the cargo must contribute, in general average, in cases of this character, where it has not been removed from the vessel.

So also in *McAndrews* v. *Thatcher*, 3 Wallace, 376, the court held, that, for expenses incurred while the goods remain under the control of the master, they are liable to general average, though they have been temporarily separated from the ship.

So in *Nelson* v. *Belmont*, 21 N. Y. 47, the court say: "If the enterprise is not abandoned, and the property, though separated from the rest, is still under the control of the master of the vessel, and liable to be taken again on board for the purpose of prosecuting the voyage, the relations of the several owners are in no respect changed. The common interest remains, and whatever is done for the protection of the common interest should be done at the common expense."

The case of the *Bedford Commercial Insurance Company* v. *Parker*, 2 Pick. 1, is quoted by appellant's counsel as sustaining the opposite view. But it really does not. There a ship, bound for New Bedford and loaded with iron, struck a reef nine miles from the town, and eighty or ninety yards from the shore. She was supposed to be wrecked, but the underwriters upon the vessel undertook to save her. While they were employed in this enterprise, the owners of the cargo of iron removed a part of it at their own expense. The court held, that so much of the iron as remained in the ship, when it was finally got off the reef, should contribute in general average, but that the portion which the owners had taken out at their own expense, before the ship was got off, was not liable. Here the master abandoned the ship, and gave possession of the cargo to its owners, and so far as they removed it, it passed from his control before the ship was saved. They received it, in fact, on the ship as if the voyage had been completed.

We find no case in which a different rule has been laid down

from that stated by the New York Court of Appeals above quoted, except that of *Job* v. *Langton*, and, as already remarked, that must be regarded as either overruled by the same court in *Moran* v. *Jones*, or so explained as to furnish no support to the argument of appellant's counsel in the present case. The lumber here not having been even temporarily separated from the ship, the case is a stronger one for the application of the doctrine of general average, than those above cited, in which that doctrine has been enforced.

In the case at bar it is in proof that Mackinaw was a mere port of refuge, and the schooner could not have been repaired there. Milwaukee was the nearest port of repair, and we do not understand it to be denied by counsel for appellant that the schooner might have left her cargo at Mackinaw, proceeded to the nearest port of repair, and after repairing have returned for her cargo, completed her voyage and held the cargo liable in general average for the expense of towage to the port of repair. 1 Parsons' Maritime Law, 296, and cases cited in note; also, cases cited *supra*. Yet it is in proof that the expense incurred in the present case was much less than would have been incident to such a course. It is further in proof that the portion of the cargo discharged at Mackinaw was not taken away until the following spring, and if the master of the schooner had desired to transship the entire cargo he would probably have been obliged to send to Chicago or Buffalo for a vessel to come expressly for that purpose. On all the facts disclosed by this record, we cannot say it was the duty of the master to discharge his entire cargo at Mackinaw to be sent forward by some other vessel at some future period, and at an uncertain expense, or that, in the course actually adopted by him, he intentionally sacrificed the interest of the shipper to that of the carrier. We see, it is true, that this lumber was delivered in Chicago at a very heavy expense, but we do not know what loss might have resulted if the entire cargo had been left at Mackinaw. But whatever might be the comparison of losses, the master had the right to do what he did do, and the

expenses, which resulted in the common safety of ship and cargo, must be adjusted on the principles of general average.

The judgment of the Superior Court must be affirmed.

*Judgment affirmed.*